UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEANAH J. DIXON<br><br>    Plaintiff<br>v.<br><br>KENNETH WILLIAMS, et al.,<br><br>    Defendants | Case No.: 2:24-cv-02103-APG-BNW<br><br>**Order (1) Denying in Part Plaintiff Seanah Dixon's Motions for Injunctive Relief, (2) Ordering Nevada Attorney General's Office to Comply With Screening Order, (3) Granting Motion for Leave to File Medical Records Under Seal, and (4) Ordering NDOC to File a Status Report**<br><br>[ECF Nos. 2, 3, 19] |

    Pro se plaintiff Seanah J. Dixon is an inmate in the custody of the Nevada Department of Corrections (NDOC) and is currently housed at High Desert State Prison (HDSP). Dixon sues various NDOC employees under 42 U.S.C. § 1983, claiming violations of her First and Eighth Amendment rights. She alleges that the defendants have shown a deliberate indifference to her medical needs and have retaliated against her by delaying and withholding critical medical care, including after she experienced a stroke and was discharged from the hospital.

    Dixon moves for a temporary restraining order (TRO) and a preliminary injunction, requesting that I compel the defendants to (1) immediately facilitate a cardiologist consultation pursuant to her hospital discharge plan, (2) stop its employees from substituting or changing her medications without specialist approval, (3) refer her to "all specialty doctors and conducting all outstanding diagnostic procedures," and (4) stock necessary medications at HDSP. ECF No. 2 at 3-4 (simplified). On November 13, 2024, I ordered the Nevada Attorney General's Office to advise within ten days of the order whether it would enter a limited notice of appearance on behalf of the defendants for the purpose of responding to Dixon's TRO motion. ECF No. 5.

Given the nature of Dixon's allegations, I also ordered the defendants to file their response to Dixon's motion within ten days of the order, allowing Dixon to reply seven days after their filing. *Id.*

On November 20, 2024, I issued a screening order directing the Attorney's General Office to file a notice by December 11, 2024 advising the court and Dixon of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. ECF No. 6. On the same day, the Attorney General's Office filed a limited notice of appearance on behalf of NDOC as an interested party to respond to Dixon's TRO motion and filed a response to Dixon's motions the next day. ECF Nos. 9, 10. The Attorney General's Office has not yet filed the notice I ordered in my screening order.

In its opposition to Dixon's motions, NDOC states that Dixon has been scheduled for a cardiology appointment. It also counters that she is not likely to succeed on the merits because she did not exhaust her administrative remedies and because NDOC did not show a deliberate indifference to her medical needs by not allowing her to direct her medical care. NDOC does not address Dixon's First Amendment claim. Dixon replies that since filing her motions, the defendants have provided her with the medications at issue and have scheduled her for a cardiologist visit, but that this does not defeat her motion because the defendants are not implementing her discharge orders with reasonable timeliness. In her second addendum, she states she was since taken to the cardiologist, but that prior to January 21, 2025, the defendants did not provide her with one of her daily prescriptions for more than three weeks and she had a heart attack on January 21, 2025.

I deny Dixon's motions for injunctive relief in part. I deny as moot her request to order a cardiologist consultation because she admits she has seen the cardiologist. I also deny her requests to order unspecified diagnostic tests and consultations, as well as her request to mandate NDOC's stocking of unspecified medications at HDSP as not meeting the requirement for narrowly drawn and least intrusive relief under the Prison Litigation Reform Act (PLRA). I order NDOC to file a status report detailing (1) whether they have stopped administering Dixon's daily furosemide prescription, (2) whether they have resumed regularly administering it if they had stopped it, and (3) what medical basis they had to stop providing her this medication if they have done so.

## I. LEGAL STANDARD

To qualify for a temporary restraining order or a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Because Dixon seeks a mandatory injunction to require the defendants to take affirmative action, she also must show that "the facts and law clearly favor" her. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted). Mandatory injunctions are "particularly disfavored" because they go "well beyond simply maintaining the status quo." *Id.* (quotation omitted).

The PLRA further restricts the availability of injunctive relief concerning prison conditions. *Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023). I cannot grant injunctive relief unless I find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* (quoting 18 U.S.C. § 3626(a)(1)(A)). Moreover, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

/ / / /

## II. DISCUSSION

### A. Cardiology Consult

Dixon moves for an order to compel NDOC to get her a cardiologist consultation, "as ordered by Spring Valley discharge orders." ECF No. 2 at 3. NDOC states that a cardiologist appointment had been scheduled. ECF No. 10 at 3. In Dixon's second addendum filed January 29, 2025, she states that "[s]he was seen by cardiology December 05, 2024." ECF No. 20 at 2. Because Dixon has received the cardiologist appointment she requested, her request for this relief is moot.

### B. Substituting/Changing Medications

Dixon moves for an order prohibiting defendants from altering or substituting her medical or medication orders without the consent of her treating doctors. Dixon's discharge plan issued by her treating physicians at Spring Valley Hospital includes a new prescription for furosemide and an existing prescription for apixaban, both to be taken daily. ECF No. 19-1 at 2, 4. The brand name for furosemide is Lasix, and the brand name for apixaban is Eliquis. *Id.* at 27, 35. Dixon's medication list includes boilerplate language advising that she should "[t]alk to [her] doctor before stopping any [] medications." *Id.* at 4. In her complaint, Dixon alleges that following discharge from the hospital, NDOC medical employees did not provide her with her discharge medications, including furosemide and apixaban, and that their "protracted delay[] in providing her medications . . . subject[ed] her" to a number of serious, adverse health effects. ECF No. 7 at 33-34. In her reply, she also includes copies of emergency grievances she filed at HDSP after being discharged from the hospital, in which she complains she was not being given furosemide and that she was experiencing breathing issues and chest pains as a result. ECF No. 17 at 73-78.

5

NDOC does not respond to Dixon's allegation about not receiving her apixaban and furosemide prescriptions, instead mentioning only the discharge plan's order for her "to take aspirin and statins." ECF No. 10 at 3. Dixon initially concedes in her reply that she received both medications, "only . . . after her TRO/PI filing November 13, 2024." ECF No. 17 at 9. And in her recently filed second addendum, she does not allege that NDOC has since stopped administering apixaban to her. ECF No. 17 at 9. Thus, it appears her request for injunctive relief related to apixaban is moot. However, she alleges in the second addendum that "despite being prescribed furosemide, prior to her January 21, 2025 heart attack[,] said medication had not been administered for in excess of 3 weeks." ECF No. 20 at 3.

I am concerned by Dixon's allegations that NDOC did not provide furosemide to her for three weeks, or that they otherwise provide it on an irregular basis when her discharge order states that she should be taking it daily. Thus, I order that by February 7, 2024, NDOC shall file a status report regarding whether they stopped Dixon's daily furosemide prescription during the period alleged by Dixon, and if so, whether they have since reinstated it. If the defendants have not reinstated her daily prescription on a regular schedule or do not plan to do so, the defendants should specify what medical basis they have for doing so.

### C. Specialist Consultations and Diagnostic Procedures

Dixon also moves for an order for consultations with "all specialty doctors" and "all outstanding diagnostic procedures." ECF No. 2 at 4. Having separately requested a cardiology consultation as discussed above, she does not otherwise specify what kinds of specialists and diagnostic procedures she requests. I therefore deny the request because it is not narrowly drawn and fails to meet the standard for granting relief under PLRA standards.

/ / / /

**D. Stocking Medication**

Dixon also moves for an order requiring NDOC to keep "life-sustaining medications in HDSP's floor stock" without relying on off-site pharmacies to fill medication orders. ECF No. 2 at 4. She does not specify which medications she requests be kept in HDSP's "floor stock." "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003). Thus, any relief I order "must be consistent with the policy of minimum intrusion into the affairs of state prison administration." *Id.* (simplified). In addition to lacking specificity, Dixon's requested remedy of micromanaging HDSP's medication system would extend beyond providing her narrowly drawn relief and would not be the least intrusive means of correcting the alleged violation. Thus, I deny the request because it also fails to meet the standard for granting relief under PLRA standards.

### III. CONCLUSION

I THEREFORE ORDER plaintiff Seanah J. Dixon's motions for injunctive relief **(ECF Nos. 2, 3) are DENIED in part** as set forth in this order.

I FURTHER ORDER that by **February 7, 2025**, the Attorney's General Office shall comply with my November 20, 2024 screening order and file a notice advising the court and Dixon of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. As to any of the named defendants for whom the Attorney General's Office cannot accept service, the Office will file, under seal, but will not serve on Dixon the last known addresses of those defendants for whom it has such

information. If the last known address of the defendants is a post office box, the Attorney General's Office will attempt to obtain and provide the last known physical addresses.

I FURTHER ORDER that plaintiff Seanah J. Dixon's motion for leave to file medical records under seal **(ECF No. 19) is GRANTED**.

I FURTHER ORDER that by **February 10, 2025**, NDOC shall file a status report regarding (1) whether the defendants stopped Dixon's daily furosemide prescription during or after the period alleged by Dixon, (2) if so, whether they have since reinstated a regular daily administration, and (3) if the defendants have not reinstated her daily prescription at a regular schedule or do not plan to do so, what medical basis they have for doing so.

DATED this 1st day of February, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE